IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

UNITED STATES OF AMERICA

VS.                                            CRIMINAL NO. 5:05-cr-19

BYRON DANIEL                                                  DEFENDANT

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the defendant, Byron Daniel's, Motion for New Trial [**docket entry nos. 22 & 28**] and his Motion to Dismiss for Double Jeopardy [**docket entry no. 29**]. Having reviewed the Motions, the government's response, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds as follows:

## DISCUSSION

After being convicted on separate federal charges unrelated to the present prosecution, Byron Daniel was incarcerated at the Federal Correctional Complex in Yazoo City ("FCC-Yazoo") at a minimal-security "camp".[1]  On April 16, 2005, the government alleges that the defendant "escaped" from that facility in violation of 18 U.S.C. 751(a).[2]  After his "escape", Daniel was

---

[1] "Minimum security institutions, also known as Federal Prison Camps (FPCs), have dormitory housing, a relatively low staff-to-inmate ratio, and limited or no perimeter fencing." http://www.bop.gov/locations/institutions.

[2] 18 U.S.C. 751(a) provides:

> Whoever escapes or attempts to escape from the custody of . . . any institution or facility in which he is confined by direction of the Attorney General . . . shall, if the custody

arrested by Bureau of Prisons Lt. Antony Phillips and initially cited for being in an unauthorized area. The next day, however, Daniel was charged with escape. As a result of this incident, many of Daniel's privileges which he had enjoyed as a minimum security inmate were revoked through administrative action by the prison.[3]

A federal Grand Jury returned an indictment against the defendant on December 19, 2005. <u>See</u> Indictment [docket entry no. 1]. Prior to trial, the government filed a motion in limine on February 22, 2006. <u>See</u> Government's Motion in Limine, at 1 [docket entry no. 8]. That motion sought to "prohibit the defendant from introducing into evidence, mentioning in voir dire or opening

---

>     or confinement is by virtue of an arrest on a
>     charge of felony, or conviction of any
>     offense, be fined under this title or
>     imprisoned not more than five years, or
>     both[.]

Testimony at trial indicated that Daniel was not attempting to "escape" the prison grounds to pursue an extended flight for freedom, but rather that he may have left the grounds temporarily to pick up a package left on a neighboring property. However, the statute makes it a crime for the prisoner to leave the prison grounds without permission from an appropriate official, regardless of his or her intentions. <u>See</u> <u>United States v. Bailey</u>, 444 U.S. 394, 407 (1980) ("Although § 751(a) does not define the term 'escape,' courts and commentators are in general agreement that it means absenting oneself from custody without permission") (end citations omitted).

[3] After the incident, the defendant was placed in a "Special Housing Unit" and remained there for over seven months. Daniel was eventually transferred from the minimal-security camp, where he was allowed to work, enjoy recreational activities and full visitation, to a higher security facility where many of those privileges were revoked or substantially limited.

statement, or otherwise presenting before the jury any evidence pertaining to any administrative disciplinary action or punishment received by the defendant, or that he was subject to, as a result of his actions resulting in the instant charges." Government's Motion in Limine, at 1. That motion was granted by the Court. On March 7, 2006, the defendant was tried before a jury and found guilty of the crime charged in the indictment. The defendant raises two post-trial motions challenging that conviction.

**I.  Motion for New Trial**

In his Motion for New Trial, Daniel argues the prosecutor's closing remarks concerning punishment or deterrence substantially prejudiced the defense, especially because the defendant was prohibited, via the motion in limine, from presenting evidence that administrative punishment was available to deter escape.

Pursuant to the Court's order, neither the prosecution nor the defense presented the jury with any evidence or argument concerning Daniel's administrative punishment by the prison. During closing, government counsel made the following remarks:

> Don't let what Lieutenant Phillips put down on that piece of paper first be the end of this matter for Byron Daniels, because let me tell you one thing. The only thing that keeps those inmates in a camp facility that has no fence, the only thing those inmates up there at Yazoo City FCI at the camp, is the knowledge that if they cross that line and leave the prison grounds, they're going to be caught and punished. And if you take away that punishment – –

Tr., 151.  Defense counsel objected to the prosecutor's statements:

> DEFENSE: Objection.  Your Honor, he's talking about punishment here.
>
> COURT: Well, that deterrent.
>
> PROSECUTION: I used the wrong word.  I should have used the word "deterrent."
>
> COURT: Substitute the word – objection sustained.  Substitute the word "deterrent" on that.

Tr., 152.  The Court understood the government's reference to "punishment" as a plea to the jury to convict Daniel to deter similar conduct from the defendant in the future.  Therefore, the Court suggested the word "deterrent" as a more apropos alternative.  The government then proceeded with its closing argument:

> I apologize.  I didn't mean to mislead anybody.
>
> The point I'm trying to make is it's important.  When inmates at a camp can freely go across and leave that campground and nothing happens, there is no deterrent to keep the next guy from going and maybe even going further.

Tr., 152.  This later statement by the government made clear that the prosecution was urging to a need to deter similar conduct in the future by the general inmate population and not just Daniel.  However, no further objection was made by the defense.

Daniel asserts that the government's closing argument improperly urged the jury members to consider "deterrence" as a factor in whether they should convict or acquit.  The defendant

cites case law from other circuits which seem to support his position.  See United States v. Johnson, 968 F.2d 768, 771 (8th Cir. 1992) ("A prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking") (quoting United States v. Monaghan, 741 F.2d 1434 (D.C. Cir. 1984)); United States v. Solivan, 937 F.2d 1146 (6th Cir. 1991) (holding that prosecutor improperly urged the jury to "tell [the defendant] and all other drug dealers like her that we don't want that stuff in Northern Kentucky . . ."); United States v. Lee, 743 F.2d 1240, 1253 (8th Cir. 1984) (prosecutor impermissibly remarked "You can better believe that each and every drug smuggler is watching what happens here today").

In case law cited by the government, however, it is clear that the Fifth Circuit does allow the prosecutor to urge deterrence in his closing argument.  In United States v. Fields, 72 F.3d 1200 (5th Cir. 1996), the prosecutor told the jury: "It's a neighborhood problem.  If we take neighborhoods back by putting these people in jail, we can eventually work our way to solving this problem.  But it's got to start right here."  Id. at 1207.  On appeal after the defendants' convictions, the Fifth Circuit addressed the propriety of those remarks:

> This circuit has held that appeals to the jury to act as the conscience of the community are permissible, so long as they are not intended to inflame.  This Court upheld as proper the

>following prosecutor's argument: "You are the arbiters of truth.  You are the ones who stand between the citizens of this county and an injustice, crimes that were committed against the nation in which we live."  That argument was held to be a mere plea to the jury to do its duty, not an attempt to inflame the jurors.  Similarly, this circuit upheld the following argument as proper: "Drugs are a terrible thing and they are ruining the society. . . .  And it's up to you to do something about it and that is returning a verdict of guilty on these charges."

Id. at 1208 (internal citations omitted).  In the specific context in which they were made, the Court finds that the government's closing remarks were not meant to inflame the jury, but rather were aimed to encourage the jury to perform its duty to convict on the evidence in spite of the fact that Daniel's infraction seemed minor.  Therefore, under Fifth Circuit law, the prosecutor's statements were not improper, and Daniel is not entitled to a new trial.

Moreover, even if those remarks were improper, in order for them to constitute reversible error, "the comments must not only be inappropriate but also must 'affect substantially the defendant's right to a fair trial.'" United States v. Ramirez-Velasquez, 322 F.3d 868, 874 (5th Cir. 2003) (quoting United States v. Murrah, 888 F.2d 24, 27 (5th Cir. 1989)).  There is no indication that the statements made by the government had any effect, much less a

substantial one, upon the defendant's right to a fair trial.[4]

The defendant next argues that he is entitled to a new trial because he was prejudiced by the limitations imposed upon him by the sustained motion in limine.  Daniel complains that the government's remarks suggested that he "suffered no consequences for his misconduct. . . . The jury was left with the impression that it needed to convict even if they believed that Mr. Daniel's unauthorized leave fell short of an escape. Because, as government counsel puts it, 'there is no deterrent to keep the next guy from going and maybe even going further.'" Supplemental Motion for New Trial, at 4.  The defendant argues that the government's remarks were false and misleading.[5]  Daniel contends that he was unable to

---

[4] Additionally, it is important to note that once the prosecutor substituted the word "deterrent" for "punishment", defense counsel made no further objection or a request for curative action.  Thus, the Court was not presented with a specific objection at trial to the prosecutor's plea for deterrence where it could evaluate the need for further limiting the government's remarks or instituting some other curative action.

[5] Daniel also complains that the prosecutor exacerbated this falsehood by improperly attributing statements to defense counsel that were never stated by him.  In closing, government counsel stated that the defense had said that Daniel's conduct was "no big deal."  The defense also states that the government improperly represented other evidence as being true, such as that Daniel told the prison official that he left the prison grounds to pick up a package and that the defense was arguing that escape required something more than crossing the property line. See Motion for New Trial, at 6.

The government responds that the defense's "theme throughout the trial was that the case involved the defendant simply being in an unauthorized area and was not a serious escape case." Government's Response to Motion to Dismiss, at 2.  For example, the defendant testified that "being out of bounds or going to pick up

counter that falsity because the sustained motion in limine prohibited any testimony that he had suffered consequences for his act and that there were other means of deterrence for violating prison rules.

As already noted, once the prosecutor substituted the word "deterrent" for "punishment", defense counsel made no further objection or a request for curative action.  The Court offered the substitution under the belief that the government was urging that Daniel be convicted to deter the defendant from future similar conduct.  The subsequent statements made by the government show that the prosecution was urging a general deterrence instead. Despite the Court's earlier ruling granting the government's motion in limine, however, nothing prevented the defendant from arguing that the prosecution had "opened the door" to the prohibited testimony by averring that nothing would deter prisoners from leaving the camp in the absence of the threat of a criminal conviction.  See, e.g., LaSalle Nat. Bank v. Mass. Bay Ins. Co., 1997 WL 24677, at *1 (N.D. Ill. Jan. 17, 1997) (granting the defendant's motion in limine to exclude certain testimony but warning that the evidence would be admissible if the defendant

---

some food is not like a real bad thing."  Tr., 137.  The officer who discovered Daniel off of the prison grounds testified that Daniel had told him he crossed the boundary to pick up a package. Tr., 32.  The Court finds, as it did at trial, that the government's interpretation of defense counsel's argument and witness testimony was a reasonable one and was not improper.

opened the door by introducing contradictory information).  In other words, the Court's proffered substitution of "deterrent" for "punishment" was made only to clarify the government's position with the jury.  No consideration was given by the Court that the defendant could be hamstrung in responding to the government's statements by the Court's earlier sustained motion in limine; however, the record is clear that the defense never requested that such consideration be given.

The Court sustained the government's motion to exclude evidence of Daniel's administrative punishment because it appeared, prior to trial, that such evidence would be irrelevant as to whether or not the defendant violated 18 U.S.C. 751(a) by escaping from federal custody.  Once, however, the government inferred that there was nothing to deter Daniel or other inmates from escaping from a camp other than fear of criminal punishment, defense counsel would have been justified in asking the Court to re-visit its previous holding. See United States v. Sallins, 1993 WL 427358, at *1 (E.D. Pa. Oct. 18, 1993) (holding that the "law of the case" doctrine does not preclude a district court from re-visiting a ruling on a motion in limine).  No such request was made by the defense; therefore, he cannot now complain that he was prohibited from introducing material to rebut the government's argument.  Daniel's motion for a new trial will be denied.

**II.  Motion to Dismiss for Double Jeopardy**

In his Motion to Dismiss for Double Jeopardy, Daniel argues that his administrative punishment constituted "punishment" under the meaning of the Fifth Amendment, and that it would be unconstitutional to twice subject the defendant to punishment for the same offense.  As stated before, the defendant was put into a special housing unit for several months after the incident and was eventually transferred to a higher security facility.  In consequence, Daniel lost many of the privileges he had enjoyed as an inmate at a minimum security federal camp.

The Fifth Amendment's Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  Thus, individuals are protected from three types of constitutional violations under the Double Jeopardy Clause: "(1) a second prosecution after acquittal for the same offense, (2) a second prosecution after conviction for the same offense, and (3) multiple punishments for the same offense." Porter v. Coughlin, 421 F.3d 141, 144 (2d Cir. 2005) (citing United States v. Lopez, 356 F.3d 463, 467 (2d Cir. 2004)).  It is the last cited protection, the prohibition against multiple punishments, which the defendant seeks to invoke to have this Court dismiss the criminal charges against him.

In Hudson v. United States, 522 U.S. 93 (1997), the Supreme Court held that the Double Jeopardy Clause prohibits multiple

sanctions for the same offense only if those sanctions constitute "criminal punishment." Hudson, 522 U.S. at 99. Under Hudson, a two-part approach is undertaken to determine if an action constitutes "punishment" under the Fifth Amendment. First, the court must determine whether the sanction at issue was intended by Congress to be a civil remedy or a criminal punishment. Id. If Congress did not intend that the sanction be criminal in nature, the court must then determine whether the action is so punitive in purpose or effect so as to "transform what has been denominated a civil remedy into a criminal penalty." Id. (internal citation omitted). This determination is made by examining seven separate factors, as laid out by Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69:

1. Whether the sanction involves an affirmative disability or restraint;

2. Whether it has historically been regarded as punishment;

3. Whether it has come into play only on a finding of scienter;

4. Whether its operation will promote the traditional aims of punishment, retribution and deterrence;

5. Whether the behavior to which it applies is already a crime;

6. Whether an alternative purpose to which it may rationally be connected is assignable for it; and

7. Whether it appears excessive in relation to the alternative purpose assigned

Hudson, 522 U.S. 99-100. Under this legal standard, the Court will

address whether the prison disciplinary action in this cause constitutes "criminal punishment" so as to bar a subsequent criminal action on based upon the same altercation.

A.  Are prison disciplinary actions defined by the legislature as civil or criminal in nature?

Congress empowered the Bureau of Prisons to "provide for the protection, instruction, and <u>discipline</u> of all persons charged with or convicted of offenses against the United States."  18 U.S.C. § 4042(a)(3) (emphasis added).  Although this statute is contained within the section of the United States Code pertaining to crimes, it is apparent that it is not, itself, a criminal statute.  The statute authorizes a federal agency to administer <u>discipline</u>, but it does not empower the agency to <u>punish</u> an individual through conviction of a substantive crime.  See <u>Hudson</u>, 522 U.S. at 103 (holding that where an administrative agency is empowered to issue sanctions, that is "prima facie evidence that Congress intended to provide for a civil sanction"); <u>United States v. Mayes</u>, 158 F.3d 1215, 1223 (11th Cir. 1998) (holding that Congress intended federal prison disciplinary actions to be civil in nature).

Case law further makes clear that prison disciplinary proceedings are not considered to be part of a criminal prosecution.  See <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974) (stating, in a case involving good time credits, that "prison disciplinary proceedings are not part of a criminal prosecution"); <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 316 (1975) ("Prison

disciplinary hearings are not criminal proceedings"); United States v. Duke, 527 F.2d 386, 390 (5th Cir. 1976) (administrative segregation is not an arrest triggering the Speedy Trial Act); Rhodes v. Henman, 946 F.2d 901 (10th Cir. 1991) (prison disciplinary hearings are civil in nature).

Therefore, having found that prison disciplinary proceedings are civil in nature, the Court will proceed to analyze the second Hudson prong.

B. Despite being denominated as a "civil" proceeding, does the seven-factor *Kennedy* test indicate that prison disciplinary actions serve, in effect, as a "criminal" penalty?

The second prong of the Court's inquiry is whether the "clearest proof" evidences that the prison disciplinary actions authorized by Congress are "so punitive in form and effect as to render them criminal despite [the government's] intent to the contrary." United States v. Ursery, 518 U.S. 267, 290 (1996). It should first be noted that while the Kennedy factors "provide useful guideposts," Hudson, 522 U.S. at 99, those factors are neither "exhaustive nor dispositive." United States v. Ward, 448 U.S. 242, 249 (1980). "It is particularly appropriate to apply the factors flexibly in the context of prison discipline cases, which 'do not fit neatly into the matrix of double jeopardy doctrine . . . because in the prison context, virtually any form of sanction seems 'criminal' and 'punitive' as we commonly understand those terms." Porter, 421 F.3d at 147 (quoting Mayes, 158 F.3d at 1223).

The first five <u>Kennedy</u> factors support Daniel's argument that the prison disciplinary proceedings are criminal rather than civil in nature.  Loss of privileges enjoyed at a minimum security camp, as well as being placed in disciplinary confinement certainly involve an "affirmative disability or restraint," and are "historically . . . regarded as punishment, as contemplated in the second <u>Kennedy</u> factor.  Furthermore, the action was taken after prison officials determined that the defendant had acted with scienter in attempting to escape, and it addressed conduct which is "already a crime."  Certainly, the administrative action was authorized by Congress with the aim to deter future conduct of a similar nature by the defendants and other inmates and, thus, the actions promoted "the traditional aims of punishment, retribution and deterrence."

In counterpoint, however, the last two <u>Kennedy</u> factors weigh heavily against a finding that the disciplinary action was a criminal punishment in effect.  The action taken against the defendant by the prison officials was "rationally . . . connected" to an alternative, non-punitive, purpose in maintaining institutional order.  <u>See</u> <u>Mayes</u>, 158 F.3d at 1224 (holding that disciplinary transfers to a high security prison, disciplinary segregation for 60 days, disallowance of accrued good conduct time, and loss of visitation privileges for up to one year did not act as criminal punishment to invoke the Double Jeopardy Clause).  The

disciplinary action undertaken in response to the defendant's attempt to leave the prison camp does not appear "excessive" in relation to the purpose of maintaining institutional order.

In striking the balance between the Kennedy factors, the Court finds that the last two factors, especially when considered in the prison context, weigh so heavily that the defendant's motion to dismiss must be denied.  As the Third Circuit reasons:

> We do not believe that the Double Jeopardy Clause was ever intended to inhibit prison discipline . . . .  If a prison disciplinary sanction bars subsequent criminal prosecution, the prison authorities will be forced to choose between instituting a disciplinary proceeding or awaiting a criminal prosecution. The process of conducting a criminal investigation and prosecution may take considerable time.  The difficulties and delay that a criminal prosecution entails would leave the prisoners who violated the prison rules without a prompt resolution of charges and hinder prison administration and discipline.

United States v. Newby, 11 F.3d 1143, 1146 (3d Cir. 1993).

Perhaps most telling, the defendant has failed to cite a single case where a court has held that prison discipline bars further criminal prosecution under the Double Jeopardy Clause.  In counterpoint, the cases, both pre- and post-Hudson, are legion denying such claims.  See, e.g., Hullum v. Maloney, 105 Fed. Appx. 278 (1st Cir. 2004); Porter v. Coughlin, 421 F.3d 141 (2d Cir. 2005); United States v. Hernandez-Fundora, 58 F.3d 802 (2d Cir. 1995); United States v. Newby, 11 F.3d 1143 (3d Cir. 1993); Keaveny

v. United States, 405 F.2d 821 (5th Cir. 1969); United States v. Gilchrist, 427 F.2d 1132 (5th Cir. 1970); United States v. Herrera, 504 F.2d 859 (5th Cir. 1970); United States v. Williamson, 469 F.2d 88 (5th Cir. 1972); United States v. Galan, 82 F.3d 639 (5th Cir. 1996); Welch v. Epps, 103 Fed. Appx. 828 (5th Cir. 2004); United States v. Shepard, 78 Fed. Appx. 387 (5th Cir. 2003); Singleton v. Page, 1999 U.S. App. LEXIS 30162 (7th Cir. Nov. 15, 1999); Garrity v. Fiedler, 41 F.3d 1150 (7th Cir. 1994); Kearns v. Parratt, 672 F.2d 690 (8th Cir. 1982); United States v. Brown, 59 F.3d 102 (9th Cir. 1995); United States v. Rising, 867 F.2d 1255 (10th Cir. 1989); United States v. Mayes, 158 F.3d 1215 (11th Cir. 1998); Holleman v. Johnson, 2001 U.S. Dist. LEXIS 15199 (N.D. Tex. Sept. 19, 2001);  New York v. Vasquez, 678 N.E.2d 482 (N.Y. 1997); Clark v. Massachusetts, 697 N.E.2d 995 (Mass. 1998).

   Thus, it is clear that prison discipline does not normally act to bar subsequent criminal prosecutions based upon the same conduct which gave rise to the civil sanction.  The defendant offers nothing to convince this Court that his case is so extraordinary as to take it out of the traditional scenario.  Therefore, Daniel's Motion to Dismiss for Double Jeopardy will be denied.

### CONCLUSION

   Based on the reasoning and authority set forth above, the Court finds that the defendant's Motion for New Trial and Motion to Dismiss for Double Jeopardy are not well-taken.  Accordingly,

-16-

IT IS HEREBY ORDERED that Byron Daniel's Motion for New Trial [**docket entry nos. 22 & 28**] is **DENIED**;

IT IS FURTHER ORDERED that Byron Daniel's Motion to Dismiss for Double Jeopardy [**docket entry no. 29**] is **DENIED**;

SO ORDERED, this the 2nd day of June, 2006.

S/DAVID BRAMLETTE  
UNITED STATES DISTRICT JUDGE
