IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

UNITED STATES OF AMERICA

VS.                                                                                      CRIMINAL NO. 5:05-cr-19

BYRON DANIEL                                                                      DEFENDANT

### MEMORANDUM OPINION AND ORDER

This cause is before the Court on Byron Daniel's Second Motion for New Trial or in the Alternative, for Interviews of Jurors **[docket entry no. 38]**. Having reviewed the motion, the government's response, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds as follows:

### FACTS AND PROCEDURAL HISTORY

On March 1, 2006, after a trial by jury, Byron Daniel was convicted of escaping from a federal prison camp in violation of 18 U.S.C. 751(a).[1]  Subsequent to Daniel's conviction, the Court received a letter from one of the jurors dated April 23, 2006, wherein the author expresses concern about the jury's deliberations and regret for convicting Daniel.  The juror states in the letter

---

[1] 18 U.S.C. 751(a) provides:

> Whoever escapes or attempts to escape from the custody of . . . any institution or facility in which he is confined by direction of the Attorney General . . . shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both[.]

that she wanted to change her vote before the verdict was entered, but that she was told by another juror that she could not do so after they had signed the official verdict form. The juror also relays in that letter that she did not understand the instructions, that another juror deliberated even though he stated that he had no opinion, and that other members of the jury apparently rushed the deliberations because they wished to pursue personal responsibilities. The letter also includes a complaint that one juror commented on his personal observations of the penitentiary that Daniel was housed in by noting that "people come and go" all the time there.

The Court allowed the defendant a period of time to file a brief concerning whether or not the juror's letter should have any impact on his conviction. Daniel filed his second motion for a new trial[2] on June 19, 2006 [docket entry no. 38] and the government responded in opposition to that motion on June 23, 2006 [docket entry no. 39].

## DISCUSSION

A party's ability to utilize post-verdict testimony or affidavits from a juror to attack the validity of the verdict is greatly inhibited. Federal Rule of Evidence 606(b) states:

---

[2] The defendant's first motion for a new trial was based primarily upon alleged improper comments made by the prosecutor at closing. The Court denied that motion on June 2, 2006 [docket entry no. 35].

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Rule 606(b) serves to protect important policy considerations including the "freedom of deliberation, finality of verdicts, and protection of jurors against harassment by dissatisfied litigants. Tanner v. United States, 483 U.S. 107, 137 (1987) (Marshall, J. concurring in part, dissenting in part) (citing McDonald v. Pless, 238 U.S. 264, 267-68 (1915); Advisory Committee Notes on Rule 606(b)).

In seeking to enforce these policy considerations, the Rule "bars juror testimony regarding at least four topics: (1) the method or arguments of the jury's deliberations, (2) the effect of any particular thing upon an outcome in the deliberations, (3) the mindset or emotions of any juror during deliberation, and (4) the testifying juror's own mental process during the deliberations." United States v. Ruggiero, 56 F.3d 647, 652 (5th Cir. 1995). The Rule, however, clearly distinguishes the aforementioned topics from

testimony concerning whether "extraneous prejudicial information was improperly brought to the jury's attention." The latter testimony is allowed, and it is well-settled that "a defendant is entitled to a new trial when extrinsic evidence is introduced into the jury room 'unless there is no reasonable possibility that the jury's verdict was influenced by the material that improperly came before it.'" United States v. Luffred, 911 F.2d 1011, 1014 (5th Cir. 1990) (quoting Llewellyn, 609 F.2d at 195)).

The Fifth Circuit, however, has distinguished situations where the jury panel was "tainted by outside influence, such as publicity or direct appeals from third parties, and panels on which one or more of the jurors themselves have violated an instruction of the court." United States v. Webster, 750 F.2d 307, 338 (5th Cir. 1984). Where the possibility of outside influence, i.e., jury tampering or publicity, on the panel is shown, a presumption of prejudice may arise and the government may be required to rebut that presumption at a hearing.[3] Id. Where the allegations concern only misconduct within the panel, the court is given "broad discretion" in determining whether to conduct a hearing on the matter. Id. (citing United States v. Chiantese, 582 F.2d 974, 979

---

[3] See United States v. Sylvester, 143 F.3d 923, 932 (5th Cir. 1998) (trial court is to first assess the severity of the suspected intrusion into the deliberations; only when prejudice is likely is the government required to prove its absence).

(5th Cir. 1978)).[4]

Daniel raises three grounds for support of his motion for a new trial or, in the alternative, for an interview of the jurors. Each ground will be addressed separately:

1. *Desire to change vote*

In her letter to the Court, the juror indicates that she wanted to change her guilty vote but was told by another juror that she could not do so because they all "signed the official verdict record." Daniel argues that because this incident occurred <u>after</u> the deliberations ended, Rule 606(b) does not preclude its consideration in deciding the present motion.

There are few reported decisions concerning when deliberations are deemed to end under the meaning of the Rule. The Colorado Supreme Court, interpreting Colorado's analogous rule, has stated that Colorado Rule of Evidence 606(b) "does not preclude juror affidavits testifying to a jury's post-deliberative conduct. Post-deliberative conduct is that conduct occurring after the jury has reached its verdict and concluded its deliberations." <u>Stewart v. Rice</u>, 47 P.3d 316, 326 (Colo. 2002).[5]  In <u>Stewart</u>, the Colorado

---

[4] <u>Webster</u> involved an investigation before jury deliberations began and not after a verdict was returned. The case, therefore, is not directly on point with the current situation confronted by the Court. However, the case is persuasive in determining the proper application of Rule 606(b) to this scenario.

[5] Affidavits of jurors may be considered to show that the verdict published was not that actually agreed upon, such as a clerical mistake in checking off the verdict of guilty or not

court concluded that where each juror signed the verdict and answered during polling that the verdict was his or hers, efforts to impeach the verdict by showing that the jurors misunderstood the verdict form were prohibited under Rule 606(b). <u>Id.</u> Thus, <u>Stewart</u> can be read for the proposition that the jury's deliberation does not conclude until the verdict is published by the court and each juror, if polled, affirms his or her decision. This Court agrees with that proposition.

The evidence which the defendant seeks to introduce to support his motion for a new trial pertains to one juror's mental processes during deliberation inasmuch as the panel's decision was not final until the verdict was entered by the Court. Up until that point in time and during polling, any member of the jury could change his or her mind and the verdict would no longer be unanimous. Therefore, under Rule 606(b), the defendant's proffered evidence on this issue is prohibited from consideration.

Moreover, even if consideration of the other juror's erroneous statement was allowed, it is clear that the defendant is not entitled to a new trial on that basis. The Court polled each juror after the verdict form was received to insure that each member of

---

guilty. <u>See, e.g.</u>, <u>United States v. Dotson</u>, 817 F.2d 1127 (5th Cir. 1987) (allowing in juror testimony to show verdict was not the one agreed upon). Here, however, there is no claim that the jury incorrectly filled out the verdict form, only that the juror who wrote the letter was incorrectly told by another juror that she could not change her mind once the form had been filled out.

the panel agreed with the guilty verdict. All jurors, including the author of the letter, stated in open court that he or she had voted guilty. "The purpose of polling is to ascertain that each juror approves of the verdict and has not been coerced or induced to concur in a verdict to which he or she does not fully assent. Polling gives effect to each juror's right to change his or her mind about the verdict agreed to in the jury room . . . ." <u>Dunaway v. Moore</u>, 78 F.3d 584 (6th Cir. 1996) (citing <u>United States v. Miller</u>, 59 F.3d 417, 419 (3d Cir. 1995); <u>Audette v. Isaksen Fishing Corp.</u>, 789 F.2d 956, 958 (1st Cir. 1986)). Trial courts are not required to inform jurors that they can change their minds during the polling. <u>United States v. Williams</u>, 990 F.2d 507, 512-13 (9th Cir. 1993) (citing Fed. R. Crim. Proc. 31(d)). "After a jury has given its verdict, has been polled in open court and has been discharged, an individual juror's change of mind or claim that he was mistaken or unwilling in his assent to the verdict comes too late." <u>United States v. Schroeder</u>, 433 F.2d 846, 851 (8th Cir. 1970), <u>cert. denied</u>, 401 U.S. 943 (1971). Therefore, Daniel is not entitled to a new trial based upon the argument that one juror was incorrectly told by another that she could not change her verdict.

2. *Statement that "Mr. Daniel said he was guilty himself. Said he did go out for food"*

The defendant argues that another statement allegedly made by one juror supports his motion for a new trial. The juror who wrote the letter claims that another member of the panel stated, "Mr.

Daniel said he was guilty himself. Said he did go out for food." Daniel acknowledges that this statement is intrinsic to the jury deliberations and, as such, may not be considered by the Court to impeach the verdict. However, the defendant then urges the Court "to reconsider [Daniel's] first motion for a new trial based on the prosecution's statements in closing about the need for deterrence. . . ." Def. Second Motion for a New Trial, at 4. If the Court were to do so, it would clearly be violating the mandates of Rule 606(b). The Rule prohibits inquiry into the validity of a verdict through juror testimony about alleged deficiencies in the internal deliberative process of the jury. The fact that such testimony may lend greater weight to a previous attack on the conviction does not excuse application of the Rule.[6] This evidence, therefore, will not be considered and Daniel is not entitled to a new trial on the basis of the alleged statement made during deliberations.

3. Alleged "external" influences on the jury

Daniel next urges the Court to grant him a new trial on the basis that one juror allegedly stated that he had made deliveries at the prison on numerous occasions and that people "come and go" there all the time. The defendant claims that this statement

---

[6] The Court does not necessarily agree that the statement, in fact, lends any more credence to the defendant's prior motion for a new trial. No decision need be reached on the issue, however, because it would be improper, under the facts presented in this case, to consider the alleged statement in deciding the present motion.

amounts to an extrajudicial observation that could potentially have tainted the deliberations.  While the movant acknowledges that the statement could be considered favorable to the defense's theory, he claims that "there is no way to determine the context without questioning the jury[.]" Second Motion for New Trial, at 5.

Determination of whether a juror's statement may be considered as extraneous prejudicial information depends upon the source of the information and its applicability to the specific facts at issue in the case.  See, e.g., Silagy v. Peters, 905 F.2d 986 (7th Cir. 199) (juror's statement during deliberations that a defendant sentenced to life would serve no more than seven years was based merely on a juror's erroneous ideas and did not constitute extraneous prejudicial information); Hard v. Burlington N. R.R. Co., 870 F.2d 1454 (9th Cir. 1989) (juror's assertion of special knowledge of x-ray interpretation did not constitute extraneous prejudicial information because the juror did not impart personal knowledge of facts specific to the litigation).  Jurors are expected to rely upon their past personal experiences when deciding a case; however, where those experiences are directly related to one or more factual issues involved in the litigation, they constitute extraneous evidence which may be used to attack the validity of the verdict under Rule 606(b).  Hard v. Burlington N. R.R. Co., 812 F.2d 482 (9th Cir. 1987).  For example, the Ninth Circuit held that a juror's statements during deliberation in a

worker's personal injury action were extraneous evidence where the juror had been employed by the same railroad and had told other juror's about the railroad's settlement practices. Hard, 812 F.2d at 486.

The alleged statement made by the juror in this case concerning his personal observations of the prison camp, including his belief that the prisoners were generally free to come and go as they pleased would seem to fit within the situation described in Hard. The statement concerned a matter of personal knowledge or opinion held by the juror that directly related to the litigation. Therefore, Rule 606(b) does not preclude the Court from considering this evidence in the present motion for a new trial. Thus, the Court must now determine whether that extraneous evidence prejudiced the defense so as to warrant a new trial.

The Court finds that the statement concerning the lackadaisical enforcement of rules at the prison camp is not prejudicial on the face of the allegation inasmuch as even Daniel notes that the statement may actually have bolstered his defense theory. The defense, however, requests that an evidentiary hearing be held in open court where the jurors may be interviewed to determine the specific context of the statement. As noted above, a court should normally hold an evidentiary hearing when faced with allegations that deliberations were possibly tainted by outside influences, such as jury tampering or prejudicial publicity. When

faced with allegations of juror misconduct, such as in this case, the court is given much more discretion in determining whether such conduct warrants further inquiry. See, e.g., United States v. Blackston, 547 F. Supp. 1200 (S.D. Ga. 1982) (holding that juror's statement to the other jurors that she knew the defendant's daughter and that the daughter had told her that the defendant was involved in drug smuggling was extrinsic evidence, but declining to hold a 606(b) evidentiary hearing). The court should be guided in this determination by looking at the contents of the allegation, seriousness of alleged misconduct or bias and the credibility of the source. Hard v. Burlington N. R.R. Co., 812 F.2d 482 (9th Cir. 1987).

The defense in this case was based primarily around the theory that the prison camp was not operated in the same manner as a higher-security prison. Daniel took the stand and asserted that the rules restricting movement around the camp were very lax and often went unenforced, even testifying that persons would enter from outside the camp to play basketball with the prisoners. Thus, Daniel claimed that he was guilty of only violating a prison rule instead of a federal statute when he went to pick up a package for a fellow inmate located just outside the camp. The statement allegedly made by the juror concerning the freedom with which people came and went at the camp served only to bolster the defendant's own testimony. Thus, it is highly unlikely that Daniel

was prejudiced by this statement. The Court, therefore, finds that no evidentiary hearing is warranted, and the defendant is not entitled to a new trial on the basis of this alleged statement.

Lastly, Daniel asserts that the allegations that the jury was "in a hurry" and wanted to reach a verdict quickly so that they could pursue other personal obligations mandates at least an investigation into the deliberations. Though the defendant characterizes the panel's alleged haste as being driven by "external" influences, evidence thereof is a textbook example of the type that may not be considered under Rule 606(b) inasmuch as it concerns the jurors' mindset during deliberations.

## CONCLUSION

Based on the reasoning and authority set forth above, the Court finds that the defendant's Second Motion for New Trial or, in the Alternative, for Interview of Jurors is not well-taken. Accordingly,

IT IS HEREBY ORDERED that Byron Daniel's Second Motion for New Trial [**docket entry nos. 38**] is **DENIED**;  *D.B.*

SO ORDERED, this the  7th  day of  August, 2006.

*David Bramlette*

UNITED STATES DISTRICT JUDGE